**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| NATIONWIDE MUTUAL FIRE ) | |
| INSURANCE CO., ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 1:07cv1215 |
|     v. ) | |
| ) | |
| TERRY O. OVERSTREET, et al., ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION

In this insurance coverage dispute, plaintiff Nationwide Mutual Fire Insurance Company ("Nationwide") seeks a declaratory judgment that it has no duty to defend or indemnify its insureds, defendants Terry and Sharon Overstreet, or their sons, defendants Jonathan and Joel Overstreet, in an action brought against defendants by Jane Doe alleging that the sons sexually molested Jane Doe in the Overstreet home. At issue on Nationwide's motion for summary judgment are the following questions:

1.    Whether defendants breached the Nationwide policy's provision requiring that notice of an "occurrence" must be given to Nationwide "as soon as practicable" where, as here, defendants waited to notify Nationwide until nearly five years after learning that Jane Doe accused their son of sexually molesting her, but seek to justify that delay on the ground that they did not know they might be held personally liable for the sexual molestation; and

2.    Whether the Jane Doe complaint sets forth an "occurrence" covered by the Nationwide policy by alleging that the Overstreet sons sexually molested Jane Doe in the Overstreet home.

These questions have been fully briefed and argued and are now ripe for disposition.

## I.

The following facts material to the resolution of Nationwide's motion for summary judgment

-1-

are derived from the parties' stipulated facts and from the record as a whole.

Nationwide, an Ohio corporation that sells insurance policies in the Commonwealth of Virginia, issued a Golden Blanket Homeowners Policy (the "Policy") to defendants Terry and Sharon Overstreet covering occurrences at their residence from 1992 to 1994. Defendants Jonathan and Joel Overstreet, the sons of Terry and Sharon Overstreet, were minors living with their parents at this residence during the relevant coverage period. Accordingly, the Policy covered not only Terry and Sharon as named insureds, but also their minor sons. *See* Policy at 2, ¶ 3. The Policy provided coverage for any "occurrence," defined as bodily injury or property damage caused by an accident, *id.* at 3, ¶ 9, but excluded coverage for injuries that were "expected or intended by the insured." *Id.* at 13, ¶ 1(a). Also important to the resolution of this dispute is the provision in the Policy requiring the insureds to notify Nationwide "as soon as practicable" of an "accident or occurrence." *Id.* at 15, ¶ 3(a).[1]

Sometime between 1992 and 1994, the Overstreets invited Sharon Overstreet's sister, Marie, and her family to live in the Overstreet home. According to Sharon, Marie's youngest daughter — Jane Doe — had been molested and raped by a babysitter, and the family wished to move away from the home where that had occurred. Accordingly, Marie asked the Overstreets to allow her family to live with them, and the Overstreets agreed. At this time, Marie told Sharon and Terry that Jane Doe

---

[1] Specifically, this provision states:

In case of an accident or occurrence, the insured will perform the following duties that apply. . . .
a.  Give notice to us or our agent as soon as practicable setting forth:
     (1) identity of the policy and insured;
     (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and
     (3) names and addresses of any claimants and available witnesses.

might exhibit some behavioral problems while staying with the Overstreets, including (i) trying to enter a bathroom when the Overstreet sons were using it; (ii) wearing a dress without underwear and attempting to sit on boys' laps; and (iii) running around without clothing.  Sharon contends that Jane Doe did exhibit such behavior and that her sons "begged" Sharon to ask Marie's family to leave, but that she did not do so.

Years after Marie's family moved out of the Overstreet home, on December 31, 2002, Marie informed Sharon that Jane Doe told Marie that Jonathan had abused Jane Doe when they lived at the Overstreet home.[2]  At that time, Marie threatened to file suit against Jonathan, but Jonathan and Jane Doe reached a "successful agreement" by which Jonathan agreed to pay counseling fees for Jane Doe.  Nevertheless, relationships between Jonathan and Jane Doe's family continued to sour, and in January 2007, Jane Doe's father sent a letter indicating that Jane Doe's family intended to sue Jonathan.  In anticipation of such a suit, the Overstreets obtained a lawyer on Jonathan's behalf.  At Jane Doe's lawyer's request, Jonathan's lawyer signed a waiver to extend the statute of limitations applicable to Jane Doe's claims against Jonathan.  Jonathan's lawyer then received a second waiver request — this time, Jane Doe's lawyers asked Terry, Sharon, and the church and school operated by them to waive the limitations period.

Apparently on notice by this waiver request that Jane Doe intended to sue her and Terry personally, Sharon emailed her insurance agent with the aforementioned facts on August 8, 2007, more than four and a half years after the Overstreets first learned of Jane Doe's accusations against Jonathan.  On August 23, 2007, two weeks after defendants provided this notice, Jane Doe filed her

---

[2] This first allegation from Jane Doe was made approximately eight years after the Policy coverage period had expired.

complaint against defendants.  From this complaint, defendants learned, for the first time, that Jane

Doe was also accusing Terry, Sharon, and Joel Overstreet of personal liability related to the alleged

molestation.

Specifically, the Jane Doe complaint alleges that between the years of 1992 and 1994, when

Jane Doe was between the ages of five and seven, Jonathan and Joel Overstreet sexually molested

her at the Overstreet home, as well as at the church and school operated by Terry and Sharon

Overstreet.  The first two counts of Jane Doe's complaint relate to the alleged molestation at the

church and school.  Importantly, Jane Doe also asserts a "special relationship" claim[3] against Terry

and Sharon relating to the alleged molestation at their home, claiming they owed Jane Doe a duty

— by virtue of taking custody of Jane Doe while she was at their home — to control the conduct of

their sons.  Jane Doe also accuses Sharon of aiding and abetting Jonathan's alleged molestation of

Jane Doe by alleging that Sharon once observed Jonathan sexually abusing Jane Doe on Jonathan's

bed, but did nothing to stop him.  Count IV of the complaint alleges assault and battery against

Jonathan and Joel, and the final two counts of the complaint allege intentional infliction of emotional

distress and gross negligence against all defendants.  As a result of her alleged injuries, Jane Doe

seeks compensatory damages of $3,000,000 and punitive damages of $350,000.

After receiving the Jane Doe complaint, defendants, invoking the Policy, demanded that

Nationwide provide a defense and indemnification with respect to the Jane Doe action.  Nationwide

denied coverage on the grounds (i) that defendants failed to notify Nationwide of the occurrence "as

soon as practicable," as required by the Policy and (ii) that the Policy, which excludes intentional

acts, does not provide coverage for the causes of action asserted against defendants by Jane Doe.

---

[3] *See* Rest. 2d Torts § 315 and text *infra* Part IV.

Nationwide then filed this action on December 4, 2007, seeking a declaratory judgment that it has no duty to defend or indemnify defendants in the Jane Doe action. Nationwide now moves for summary judgment, which defendants oppose, in part.[4]

## II.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.

Nationwide has moved for summary judgment against defendants Terry, Sharon, and Jonathan Overstreet on the ground that these defendants failed to notify Nationwide of the actions underlying the Jane Doe lawsuit "as soon as practicable," as required by the Policy.[5] It is uncontested (i) that these defendants had actual knowledge on December 31, 2002, that Jonathan Overstreet was accused of molesting Jane Doe at the Overstreet family residence, and (ii) that they

---

[4] Defendants do not oppose summary judgment with respect to Count III of the complaint, in which Nationwide contends that the Policy provides no coverage for Counts I and II of the Jane Doe complaint. These counts allege liability against defendants in their capacity as agents of the Baptist Believers Church of Sterling and/or the Leesburg Christian School. Defendants agree that such allegations are excluded from coverage under the Policy, and therefore summary judgment must be granted in favor of Nationwide as to Count III of Nationwide's complaint.

[5] Nationwide does not seek summary judgment against Joel Overstreet on this ground because it is conceded that none of the defendants had notice of the sexual molestation allegations against Joel until the Jane Doe complaint was filed in August 2007.

did not notify Nationwide of these allegations until August 8, 2007.  Nationwide contends that these defendants' nearly five-year delay in notifying Nationwide of the alleged molestation constitutes a breach of the Policy notice requirement.  Defendant Jonathan Overstreet concedes that he did not provide notice "as soon as practicable" under the Policy, but defendants Terry and Sharon Overstreet argue that they did not violate the notice provision because they did not realize they might be held personally liable for the alleged sexual molestation by their son until at or near the time of the filing of the Jane Doe complaint on August 23, 2007.

In Virginia,[6] an insurance policy is a contract and is therefore subject to rules of contract interpretation.  *Harleysville Mut. Ins. Co. v. Dollins*, 109 S.E.2d 405, 409 (Va. 1959); *see also  State Farm Fire & Cas. Co. v. Walton*, 423 S.E.2d 188, 191 (Va. 1992).  Accordingly, words used in a policy are given "their ordinary and usual meaning when they are susceptible of such construction." *Walton*, 423 S.E.2d at 191; *see also Lyon v. Paul Revere Life Ins. Co.*, 289 F. Supp. 2d 740, 743 (W.D. Va. 2002) ("In the absence of ambiguity, Virginia courts will give a policy's words their ordinary and customary meaning and apply them as written.").  Applying this principle, Virginia courts have consistently held that policy provisions "requiring that written notice of an accident be given 'as soon as practicable' or 'immediately' are reasonable and enforceable," and are a condition precedent which, "if not complied with bar recovery under the policy." *State Farm Mut. Auto. Ins. Co. v. Douglas*, 148 S.E.2d 755, 777 (Va. 1966); *see also Lyon*, 289 F. Supp. 2d at 743.  Importantly,

---

[6] The parties agree that Virginia law applies to the resolution of this dispute, as it is well-settled that the forum state's choice-of-law rules apply in a federal diversity jurisdiction, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), and Virginia's choice-of-law rules dictate that "generally, the law of the place where an insurance contract is written and delivered controls issues as to its coverage."  *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993).  Here, there is no dispute that the Policy was delivered to defendants in Loudoun County, Virginia and thus, Virginia law governs issues of interpretation and breach of the Policy.

such provisions "only require that insured act within a reasonable time, considering all of the circumstances." *North River Ins. Co. v. Gourdine*, 135 S.E.2d 120, 124 (Va. 1964); *see also State Farm Fire & Cas. Co. v. Scott*, 372 S.E.2d 383, 385 (Va. 1988). Accordingly, the question here is whether the Overstreets complied with the Policy's notice requirement by providing notice within a reasonable time under the circumstances; otherwise, their failure to do so will preclude their claim for coverage under the Policy.

There is no lack of published caselaw concerning the interpretation and application of policy provisions requiring notice of an occurrence as soon as practicable or reasonable. This is not surprising given the ubiquity of these provisions in insurance contracts and the propensity of people to delay in giving such notice to their insurers. While this caselaw, at first blush, seems to suffer from a lack of uniformity, a more careful review reveals six consistent principles that serve to harmonize the many cases.

1. **Whether notice was given "as soon as practicable" is normally a question of fact for the jury.**

The first principle, well-settled in Virginia, is that "[t]he determination of whether notice was given . . . as soon as practicable is usually a question for the jury." *Mason & Dixon, Inc. v. Casualty Co.*, 98 S.E.2d 702, 705 (Va. 1957) (citing *Shipp v. Connecticut Indem. Co.*, 72 S.E.2d 343 (Va. 1952)); *see also Atlas Ins. Co. v. Chapman*, 888 F. Supp. 742, 745 (E.D. Va. 1995). Thus, summary judgment is improper where "the facts are disputed or the inferences uncertain, or when there are extenuating circumstances for the delay." *Douglas*, 148 S.E.2d at 777.

2. **Where there are extenuating circumstances for the delay, the jury may consider whether these circumstances furnish a justification or excuse for the delay.**

Extenuating circumstances may include, for example, an injury that precludes the insured from notifying its insurer of an occurrence.  In *Mason & Dixon Lines, Inc. v. United States Casualty Co.*, 98 S.E.2d 702 (Va. 1957), the insured was unconscious for two weeks after his accident, remained in the hospital for six weeks, and wore a cast on his leg for eight weeks after he left the hospital.  He also suffered from severe headaches and memory loss.  On these facts, the Supreme Court of Virginia found that whether the insured's several-month delay in notifying his insurer was reasonable was a question of fact for the jury.  *Id.* at 705 ("Different inferences might be reasonably drawn from the evidence adduced and questions that should be decided by a jury were thus presented.").  Similarly, in *State Farm Mutual Automobile Insurance Co. v. Douglas*, 148 S.E.2d at 776-77, the insured was rendered unconscious during an accident in which he was the passenger in his own car.  Because he had been unconscious, the insured did not recall the details of the accident, and he therefore attempted to contact the driver of the vehicle to fill out a form describing the accident to submit to his insurer.  The driver "was evasive and uncooperative," but eventually filled out the form, which the insured submitted to the insurer, 65 days after the accident.  *Id.* at 778. Under these circumstances, the court found that "[t]here was evidence from which it could be concluded that [the insured] was diligent in his efforts to get [the driver] to fill out the required form, and that the giving of an earlier notice was impracticable."  *Id.*  Given this, the court upheld the factual finding of the trial judge, sitting as a jury, that the insured had complied with the notice provision.  *Id.*; *see also Penn-America Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 454 (E.D. Va. 2006) (finding that the insured had not breached the notice provision of his policy, despite a two-year notice delay, where the accident occurred after the insured's business had closed and on property not owned by the insured).

3.     **An insured's contention that a delay was caused by the insured's mistaken, subjective belief that his policy would not be implicated is, as a matter of law, no excuse or justification for the delay; instead, the delay must be evaluated from an objective point of view.**

The Supreme Court of Virginia has made clear that the duty to notify is determined from an objective standpoint, and "[f]ailure to give timely notice will not be excused when the insured only subjectively concludes that coverage under the policy will not be implicated." *Dan River, Inc. v. Commercial Union Ins. Co.*, 317 S.E.2d 485, 487 (Va. 1984) (finding unreasonable as a matter of law the insured's decision to wait more than seven years after discrimination lawsuit was filed because it believed it was only liable for injunctive relief). Put differently, it is no defense to a claim that notice was untimely to say that the insured subjectively did not understand his policy might be implicated. *See Walton*, 423 S.E.2d at 191 (finding a two-year delay unreasonable as a matter of law where the insured refused to notify his insurer of child's wrongdoing because the child "had not been convicted of anything"); *Lord v. State Farm Mut. Auto. Ins. Co.*, 295 S.E.2d 796, 799-800 (Va. 1982) (upholding verdict for insurer where insured waited 173 days to notify his insurer and where insured "was not prevented by his injury, or any other circumstance, from personally notifying State Farm seasonably," but rather "simply was ignorant of the policy provisions which, arguably, may have covered his medical expenses"); *cf. Mt. Vernon Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 224 F. Supp. 666 (E.D. Va. 1963) (granting summary judgment for insurer where insured waited ten months to notify insurer because he believed the victims had settled the dispute). In sum, an insured's subjective mistaken belief that an occurrence is not covered cannot excuse or justify a delayed notice. Rather, the duty to notify the insurer arises when an incident occurs "'which was

-9-

sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by [the] policy.'" *Walton*, 423 S.E.2d at 192 (quoting Black's Law Dictionary 1080 (6th ed. 1990)) (alteration in original).

4.      **Even absent a justification or extenuating circumstances for a delay, it remains a jury issue whether notice was given "as soon as practicable" where an insured's notice to the insurer was delayed by a relatively short amount of time.**

Even where no justification is given for delayed notice, the question whether a short delay violates an insurance policy is a question of fact to be resolved by the fact-finder.  For example, in *Liberty Mutual Insurance Co. v. Safeco Insurance Company of America*, 288 S.E.2d 469 (Va. 1982), the insurance company received notice 51 days after the occurrence.  After a bench trial, the trial court ruled in favor of the insurer.  The Supreme Court of Virginia affirmed, noting that "[u]nder these circumstances, such delayed notice, without any justification whatever, constitutes a breach of the policy condition in question." *Id.* at 473.  A contrary conclusion was reached, on similar facts, during the trial in *State Farm Fire & Casualty Co. v. Scott*, 372 S.E.2d 383 (Va. 1988).  There, the insured waited 11 weeks before notifying his insurer of an occurrence.  The trial court refused to hold that, as a matter of law, the insured had violated the notice provision in the policy and submitted the issue to the jury, which returned a verdict in favor of the insured. *Id.* at 385.  The Supreme Court of Virginia affirmed, holding that under the circumstances of the case the trial court had properly submitted the notice question to the jury. *Id.* at 386.  As these cases demonstrate, where a delay in providing notice is relatively short, the question whether the notice provision in an insurance policy was violated is a question of fact for the fact-finder.

5.      **In some circumstances, notice may be so long delayed as to violate an insurance**

**policy's notice provision as a matter of law.**

Although the question whether relatively brief unexcused delays in providing notice constitute a breach of a policy is normally a question of fact for the jury, like all issues of fact, there may be certain circumstances in which "reasonable men should not differ as to the proper inferences deducible from the proven facts, [and] the question can be decided as a matter of law." *Mason & Dixon*, 98 S.E.2d at 705. In this regard, the Supreme Court of Virginia has held that where an insured *never* notifies its insurer of an accident, but rather the insurer learns of an accident involving its insured from another party to the accident or some other third party, the insured has breached the notice provision and the insurer is therefore entitled to judgment as a matter of law. *See State Farm Mut. Auto. Ins. Co. v. Porter*, 272 S.E.2d 196, 200 (Va. 1980) (holding that insured breached policy as a matter of law where insurer received notice only from hit-and-run victim's attorney); *cf. Safeco*, 288 S.E.2d at 473 (noting that the insurer stipulated that "notice by an attorney for claimants to an independent agent" was sufficient notice and deciding the timeliness of that notice "[w]ithout endorsing that rather unusual position"). Similarly, the Supreme Court of Virginia has also held that a long delay in notifying an insurer of an occurrence, with no justification, can in certain circumstances constitute a violation of a notice provision as a matter of law. For example, in *Dan River, Inc. v. Commercial Union Insurance Co.*, 317 S.E.2d 485 (Va. 1984), the Supreme Court of Virginia found that a seven-year delay in notifying the insurer of a discrimination suit was unreasonable as a matter of law. Likewise, in *State Farm Fire & Casualty Co. v. Walton*, 423 S.E.2d 188, 192 (Va. 1992), the Supreme Court of Virginia found that the insured's delay of more than two years in notifying his insurer of his child's wrongdoing was, as a matter of law, a violation of the insurance policy. These cases illustrate that there exists a continuum, at one end of which are cases

in which notice is delayed by such a short period of time that even if the insured offers no justification for the delay, the question whether the insured breached the terms of his insurance policy is a question of fact for the jury.[7]  At the other end of the continuum are those cases in which an unjustified notice is so long delayed as to be untimely as a matter of law.[8]

> **6.      An insurer need not demonstrate that it was prejudiced by the insured's delay in providing notice, but lack of prejudice may be considered by the jury if the reasonableness of the delay is otherwise a jury question.**

The Supreme Court of Virginia has made clear that the fact-finder may consider whether the insurer was prejudiced by delayed notice only where reasonable minds could differ regarding the reasonableness of the delay.  In other words, an insurer need not show it was prejudiced by the failure of its insured to provide notice, as compliance with the notice requirement is a condition precedent to recovery under an insurance policy.  *Porter*, 272 S.E.2d at 199-200; *see also Erie Ins.*

---

[7] *See, e.g., Safeco*, 288 S.E.2d at 473 (upholding a bench trial verdict for insurer based on a 51-day delay), *Scott*, 372 S.E.2d at 385 (upholding a jury verdict for insured despite an 11-week delay); *Penn-America*, 461 F. Supp. 2d at 454 (finding a two-year delay reasonable where insured had provided a sufficient justification).

[8] *See Walton*, 423 S.E.2d at 192 (finding a two-year delay unreasonable as a matter of law); *Dan River*, 317 S.E.2d at 490 (holding that a seven-year delay was unreasonable as a matter of law); *see also Goodwin v. Union Ins. Co.*, 2007 WL 582931, at *6 (E.D. Va. Feb. 20, 2007) (holding insured violated notice provision as a matter of law, based on the "sheer lapse of time" of the three-year delay in giving notice); *Virginia Farm Bureau Mut. Ins. Co. v. Sutherland*, 2004 WL 2360162, at *2 (W.D. Va. Oct. 19, 2004) (granting summary judgment for insurer because "a delay of 601 days is beyond the outer limits of reasonableness"); *Lyon v. Paul Revere Life Ins. Co.*, 289 F. Supp. 2d 740 (W.D. Va. 2002) (granting summary judgment for insurer where insured notified insurer more than two years after her covered loss allegedly began); *Atlas Ins. Co. v. Chapman*, 888 F. Supp. 742 (E.D. Va. 1995) (holding that, "as a matter of law, the four month delay in notifying the insurer, without any excuse or sufficient justification, constitutes a substantial and material breach of the notice provision, which is a condition precedent to coverage"); *Vermont Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181 (E.D. Va. 1995) (holding untimely as a matter of law notice given 18 months after insured learned her homeowners policy might be implicated by an alleged molestation at her home).

*Exchange v. Meeks*, 288 S.E.2d 454 (Va. 1982).[9]  Accordingly, where notice is so long delayed that it is untimely as a matter of law, an insured may not recover under the policy even if the insurer concedes it was not prejudiced by the delay.[10]  Yet, where a delay is not so lengthy as to be a "substantial and material" violation of the policy as a matter of law, prejudice may be considered by the fact-finder in ascertaining whether a delayed notice is a policy breach.  *See Scott*, 372 S.E.2d at 385 (quoting *Shipp v. Connecticut Indem. Co.*, 72 S.E.2d 343, 347 (Va. 1952)) (holding that "[a]n absence of prejudice . . . is a 'circumstance to be considered on the question of the materiality of the information which it is claimed the insured failed to give'"); *see also Penn-America*, 461 F. Supp. 2d at 452-54.

## IV.

These harmonizing principles, applied here, compel the conclusion that, as a matter of law, defendants failed to give notice "as soon as practicable."   Terry and Sharon Overstreet were aware of the allegations against Jonathan on December 31, 2002, but never informed Nationwide of these allegations until August 8, 2007.  A delay of nearly five years is, as a matter of law, unreasonable.

---

[9] In this regard, Virginia is in the minority of jurisdictions, as most jurisdictions require an insurer to show not only that an insured breached its policy's notice provision, but also that the insurer was prejudiced by the delay, in order to avoid providing coverage under the policy.  *See* 13 *Couch on Insurance* § 193:32 (3d ed. 1995).

[10] *See Walton*, 423 S.E.2d at 192 (holding that insurer's concession that it was not prejudiced by insured's delayed notice was immaterial because "a delay of over two years in complying with the provisions of the policy's listed duties after loss is, as a matter of law, such a substantial and material violation of State Farm's notice requirement that it need not show that it was prejudiced by the delayed notice"); *see also Chapman*, 888 F. Supp. at 746-47 (holding that insured breached notice requirement as a matter of law where insured waited four months, without justification, to notify insurer of an occurrence, and rejecting insured's argument that a factual question remained "if there is a possibility that a jury might find that the insurer has not been prejudiced").

Also unreasonable, on these facts, is defendants' proffered justification for their delay, namely that Terry and Sharon did not know that Jane Doe would sue them personally for the alleged molestation committed by their son in their home. This argument is unavailing because defendants' policy did not require them to notify Nationwide of *claims* against them, but rather of any *occurrences*. As the Supreme Court of Virginia has made clear, the duty to notify the insurer arises when an incident occurs "'which was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by [the] policy.'" *Walton*, 423 S.E.2d at 192 (quoting Black's Law Dictionary 1080 (6th ed. 1990)) (alteration in original); *see also Dan River*, 317 S.E.2d at 487 (holding that a notice provision "requires the insurer to be notified whenever, from an objective standpoint, it should reasonably appear to the insured that the policy may be involved"). Put differently, the duty to notify arises when an insured learns of an occurrence that, from an objective standpoint, may potentially lead to a claim against the insured that might implicate his or her homeowners policy. Nor is the duty of notice triggered only by the anticipation of *valid* claims that may be covered; instead, the duty of notice is broader; it extends to incidents sufficiently serious as to lead a person of ordinary intelligence and *prudence* to believe that any claim arguably covered by the policy may be brought, even claims that may ultimately fail or that the insured may believe are not valid in law or fact.[11]   In summary, measured by the Supreme Court of Virginia's *Walton* standard, Terry and Sharon Overstreet were bound by the Policy to give notice

---

[11] Of course, this does not mean that insureds are required to anticipate every conceivable claim that may be brought. All that is required is that the insured notify the insurer of an occurrence where a reasonable person, based on the facts of the occurrence known to the insured, would anticipate that a claim might be brought that would implicate the policy. This duty of the insured to notify the insurer of occurrences that might give rise to invalid claims is consistent with the duty of the insurer to defend the insured against such claims, as the duty to defend is broader than the duty to indemnify. *See VEPCO v. Northbrook Property & Cas. Ins.*, 475 S.E.2d 264, 265-66 (Va. 1996).

-14-

as soon as reasonably practicable after learning of the sexual molestation allegation.  This is so because these allegations were very serious — they alleged the sexual molestation of their niece, by their son, in their home.  Such allegations are sufficiently serious to lead a person of ordinary intelligence and prudence to believe that a claim might be brought against them and their sons.

 Defendants' argument to the contrary, relying on *Bell v. Hudgins*, 352 S.E.2d 332 (Va. 1987), is unpersuasive.  In *Bell*, which did not involve insurance coverage or notice issues, the Supreme Court of Virginia held that, "in the absence of a master-servant or principal agent relationship, the fact of paternity alone does not impose liability on parents for the torts of their minor child." *Id.* at 333.  Thus, the Supreme Court of Virginia rejected the idea that parents were negligent for failing to place their child, who had a history of violent outbursts, in an "institution for safekeeping" when that child attacked a woman at her place of employment. *Id.*  In doing so, however, the court noted that "theories of respondeat superior and negligent entrustment, concepts which are different from the theory relied upon in the present case" were valid theories which could be asserted against a parent. *Id.* at 334; *see also Starr v. Ebbesen*, 18 Va. Cir. 267, 269 (1989) ("*Bell* does not undermine the conclusion that a cause of action for negligent entrustment should be recognized.").  Nor can it be safely said that the Supreme Court of Virginia foreclosed other kinds of claims against parents on facts not there presented.

Distilled to its essence, defendants' argument is that they could not have known they would be held liable for their son's actions because parents are not vicariously liable for their children's conduct under Virginia law.  This argument fails to persuade, as *Bell* did not hold that a parent can never be held liable in connection with misconduct by a child.  Rather, as *Bell* and subsequent cases make clear, parents may still be independently liable for their own negligent conduct. *Bell*, 352

S.E.2d at 334; *see also Starr*, 18 Va. Cir. at 269. There is also a possibility that parents who voluntarily undertake to watch a child in their home, taking that child away from the protection of his or her parents, may owe a duty of care to that child.[12] Thus where, as here, parents learn that a minor child accuses their son of sexually molesting her in their home, they should reasonably foresee they might be held personally liable on possible theories that might be covered by a homeowner's policy. Moreover, even if Terry and Sharon believed that no meritorious or recognized cause of action could be brought against them, a reasonable person in their position would contemplate that a lawsuit might be brought, and that their insurance policy might therefore be implicated.[13] At bottom, Terry and Sharon either made an objectively erroneous judgment that no claim could be brought against them, or else they simply never considered the question whether the Policy might

---

[12] *See Doe v. Bruton Parish Church*, 42 Va. Cir. 467, 473 (1997) (holding that where an individual cares for a child as a babysitter, that "child is deprived of the protection of his parents, and the babysitter owes a duty to the child to exercise reasonable care in controlling the conduct of third persons" in certain circumstances); *see also* Rest. 2d Torts § 320 (noting that one "who voluntarily takes the custody of another under circumstances . . . to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other" if that person has reason to know of the danger and his ability to control it).

[13] Indeed, examples of cases brought against parents for failing to control their children and against landowners for failing to protect invitees from harm are legion. *See, e.g., Thompson v. Skate America, Inc.*, 540 S.E.2d 123 (Va. 2001) (skating rink and parents sued after child assaulted boy at skating rink); *Bell*, 352 S.E.2d at 333 (parents sued when child assaulted individual at her place of employment); *Bruton Parish*, 42 Va. Cir. at 473 (babysitter sued after her son sexually abused children); *Bottomley v. Shores*, 27 Va. Cir. 294 (1992) (parents sued after their child doused another child with gasoline and lit him on fire at parents' home); *Aetna Cas. & Sur. Co. v. Jett*, 1995 WL 238565 (4th Cir. Apr. 25, 1995) (grandmother sued after her husband sexually molested granddaughter in grandmother's home); *Vermont Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181 (E.D. Va. 1995) (aunt sued after her adult son molested niece in her home); *Pawtucket Mut. Ins. Co. v. Lebrecht*, 190 A.2d 420 (N.H. 1963) (parents sued for negligently raising son after minor son assaulted another minor). The fact that many such claims do not succeed does not count against the notion that a person of ordinary intelligence and prudence should nonetheless anticipate that these claims may be brought.

be implicated and whether they should give notice under the Policy, perhaps because Terry and Sharon failed to anticipate or foresee that Jane Doe would bring suit against them.  These are not valid justifications for failing to provide notice under Virginia law.  *See Dan River*, 317 S.E.2d at 487 ("Failure to give timely notice will not be excused when the insured only subjectively concludes that coverage under the policy will not be implicated.").  Accordingly, Terry, Sharon, and Jonathan Overstreet's tardy notice is a breach of the Policy's notice provision, and they are thus not entitled to coverage.

This result is consistent with the Fourth Circuit's opinion in *Aetna Casualty & Surety Co. v. Jett*, 1995 WL 238565 (4th Cir. Apr. 25, 1995) (unpublished).  There, the insured was sued for negligent supervision of her granddaughter after her granddaughter was molested by the insured's husband in her home.  The insurer denied coverage on the ground that notice was delayed two years. The insured argued that her duty to notify the insurer did not arise when she learned of the alleged molestation, but rather two years later when she learned a claim would be filed against her.  The district court, applying Virginia law, rejected this argument and concluded, as a matter of law, that the insured's delayed notice of more than two years after she learned of the alleged molestation was unreasonable as a matter of law.  *Id.* at **1.  The Fourth Circuit affirmed, relying on the holding of *Walton*, namely that a two-year delay in notifying the insurance company was a violation of the policy as a matter of law and that the "duty to give notice arose long before a claim was filed against [the insured]."  *Id.*  For the same reasons, the same result should obtain here.

Finally, defendants argue that Nationwide suffered no additional prejudice from defendants' nearly five-year delay in giving notice.  Distilled to its essence, defendants' argument is that Nationwide had already suffered prejudice between 1994, when the alleged molestation occurred,

-17-

and 2002, when defendants learned of the alleged molestation, and that Nationwide could not have suffered any additional prejudice between 2002 and 2007, when defendants finally provided Nationwide with notice. This argument, even if factually true, is irrelevant because, as already noted above, prejudice may only be considered when reasonable minds could differ regarding the timeliness of notice given by the insured. *See Walton*, 423 S.E.2d at 192. Where, as here, the insured, without justification, waits almost five years to provide the required notice, it is irrelevant whether the insured suffered any prejudice from the delay. *Id.*

Thus, Nationwide's motion for summary judgment against Terry, Sharon, and Jonathan Overstreet must be granted on the ground that these defendants failed to notify Nationwide of the occurrence giving rise to coverage under the Policy "as soon as practicable."

## V.

Nationwide also moves for summary judgment against defendants Jonathan and Joel Overstreet on the ground that the only allegations asserted against them in the Jane Doe complaint are for intentional acts not covered by the Policy. Because Jonathan has conceded he did not provide notice of the occurrence to Nationwide "as soon as practicable," summary judgment must be granted in favor of Nationwide as against Jonathan on this ground.[14] Accordingly, the only remaining issue is whether the Policy covers the allegations in the Jane Doe complaint made against Joel.

The Policy states that Nationwide "will pay damages the insured is legally obligated to pay due to an occurrence." Policy at 12. An "occurrence" is defined as "bodily injury" resulting from an accident. *Id.* at 3, ¶ 9. Moreover, the Policy also specifically excludes coverage for bodily injury

---

[14] *See supra* Part III. Notably, even if Jonathan had not conceded that he failed to provide notice to Nationwide "as soon as practicable," the analysis with respect to the intentional acts exclusion would apply with equal force to Jonathan.

"which is expected or intended by the insured." *Id.* at 13, ¶ 1(a).  The Supreme Court of Virginia

has interpreted similar provisions and has held that they preclude coverage for incidents that are

alleged to have been done intentionally.[15]

Here, the Jane Doe complaint alleges (i) assault and battery; (ii) intentional infliction of

emotional distress; and (iii) gross negligence against Joel.  Joel does not seriously contend that the

assault and battery charge is covered by the Policy; nor could he do so, as this claim is obviously for

an intentional act.  Instead, Joel contends that the intentional infliction of emotional distress and

gross negligence counts are "arguably" within the Policy's coverage.  The argument that an

*intentional* infliction of emotional distress allegation is anything but intentional is without merit.

Indeed, the only case cited by defendants in support of their argument is readily distinguishable.  *See*

*General Agents Ins. Co. of Am. v. King*, 46 Va. Cir. 97 (1998).  There, the trial court held that it was

premature to issue a declaratory judgment that the insured's policy did not afford him a defense

against the underlying complaint, which alleged intentional acts, because the policy contained an

exception to the intentional acts exclusion for "the use of reasonable force to protect persons or

property." *Id.* at 98  Thus, the court held that determination of the policy coverage had to await

resolution of the underlying claim against the insured.  *Id.*  Put differently, the court found that the

underlying claim for intentional infliction of emotional distress was saved from the policy's

---

[15] *See Travelers Indem. Co. v. Obenshain*, 245 S.E.2d 247, 249 (Va. 1978) (entering judgment for insurer where the claims against the insured alleged intentional torts); *Norman v. Ins. Co. of North Am.*, 239 S.E.2d 902, 905 (Va. 1978) (finding that where "[a] malicious and intentional assault was alleged, not a wantonly negligent act resulting in an assault and battery," the intentional acts exclusion precluded coverage for the insured); *see also Town Crier, Inc. v. Hume*, 721 F. Supp. 99, 104 (E.D. Va. 1989) (holding that "all claims in the state complaint seek relief only for injuries caused either knowingly or intentionally by the Insureds, or for injuries caused by a violation of a statute," and that "[a]s such these claims are excluded from policy coverage").

exclusionary language only because an exception to that exclusionary language potentially applied. No such exception applies here.

The gross negligence claim presents a closer question.  The Jane Doe complaint states that "[t]he conduct of each and every Defendant as alleged herein was willful and wanton behavior in reckless disregard of the rights of Jane Doe, and was therefore grossly negligent."  Jane Doe Complaint at ¶ 60.  While this allegation apparently conflates "willful and wanton" behavior with "reckless" and "grossly negligent" behavior,[16] the factual allegations relating to Joel Overstreet unquestionably show that his alleged actions were intentional, as they state that, at the direction of his brother, Jonathan, Joel "engage[d] in sexual conduct with Plaintiff as described above," which included "exposing his sexual genital parts to Plaintiff and forcing her to expose hers; touching and fondling Plaintiff's genital parts and forcing Plaintiff to touch and fondle his genitals; forcible oral sodomy; and other acts of sexual abuse and molestation," while Jonathan watched.  *Id.* at ¶¶ 11, 14. There is simply nothing in these factual allegations that might plausibly be construed to mean that the injuries to Jane Doe caused by Joel Overstreet were the result of an "accident" or were not intended.  One does not accidentally or negligently sexually molest another.  Accordingly, all of the counts against Joel Overstreet in the Jane Doe complaint allege intentional acts or injuries not resulting from an accident, and thus Nationwide has no duty to defend  or indemnify him.[17]

---

[16] In Virginia, gross negligence "is action which shows indifference to others, disregarding prudence to the level that the safety of others is completely neglected."  *Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997).  Importantly, "[g]ross negligence is negligence which shocks fairminded people, but is less than willful recklessness."  *Id.* (citing *Griffin v. Shively*, 315 S.E.2d 210, 212-13 (Va. 1984)).

[17] For these reasons, even if Jonathan had complied with the Policy's notice requirement, Jonathan would not be entitled to coverage.

Defendants' sole cited authority in support of their gross negligence argument, *Western World Ins. Co., Inc. v. Hartford Mut. Ins. Co.*, 784 F.2d 558 (4th Cir. 1986), is distinguishable. There, the plaintiff in the underlying action sued the insured — a police officer — pursuant to 42 U.S.C. § 1983, alleging that the police officer was "wrongful or 'wantonly or grossly negligent'" in shooting at the plaintiff from a distance of fifty feet. *Id.* at 561.  The Fourth Circuit held that the "complaint thus leaves open the possibility that [the insured] acted negligently rather than intentionally in shooting [the victim]." *Id.* at 562.  Here, by contrast, the underlying facts alleged in the complaint do not leave open this possibility; the Jane Doe complaint, on its face, alleges that Joel acted intentionally in molesting Jane Doe, and not accidentally.  *See id.* (holding that the insurer had a duty to defend where "the complaint on its face could support a finding that [the insured's] shooting of [the victim] was an accident").

For these reasons, Nationwide has no duty to defend or to indemnify any of the defendants in connection with the Jane Doe complaint, and plaintiff's motion for summary judgment must be granted.

An appropriate Order will issue.

_____
/s/
T. S. Ellis, III
United States District Judge

Alexandria, Virginia
July 24, 2008

-21-